IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CHANDRA L. PORTER,

    Plaintiff,

v.                        CV 415-297

CITY OF SAVANNAH, GEORGIA,

    Defendant.

# ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 44.) The Clerk has given Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 45.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The motion has been fully briefed and is ripe for decision.

## I. BACKGROUND

Plaintiff is an African-American who works as a Human Resources Analyst for Defendant City of Savannah, Georgia. Plaintiff alleges that she was not selected for several promotions due to Defendant's racial animus in violation of

1

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1983.

Plaintiff began working for Defendant in 1998 as a Communications Specialist for the Savannah-Chatham Metropolitan Police Department ("SCMPD"). (Porter Dep., Doc. 44-3, at 10.) Between 2001 and 2011, Plaintiff applied for and was denied several promotions. (Porter Decl., Doc. 48-4, ¶¶ 10-20.) The candidates selected for those positions were non-African American employees. (Id.)

In 2001, Plaintiff was transferred from the SCMPD to human resources. (Porter Dep. at 10.) During her tenure in the human resources department, Plaintiff received several reprimands. On May 27, 2005, Plaintiff was scolded for failing to make eye-contact or greet employees who visited the human resources department. (Id. at 17; Doc. 44-3, at 56-57.[1]) On September 20, 2006, Plaintiff received an oral reprimand for insubordination when she refused to cover the phones when the department was short-staffed. (Porter Dep. at 22-23; Doc. 44-3, at 58.)

On July 15, 2008, Plaintiff received a written reprimand stemming from two incidents. (Porter Dep. at 27; Doc. 44-3, at 94-95.) The first incident involved how Plaintiff dealt with a former Savannah employee who called Plaintiff to ask about

---

[1] The Court's recitation of facts references the exhibits discussed during Plaintiff's deposition. The Court cites these exhibits as Doc. 44-3 and uses the page numbers as they appear on its docket.

2

Defendant's Cobra Health Insurance policy. (Porter Dep. at 27.) Plaintiff was criticized for failing to obtain the information the employee sought and instead directing the employee to call the insurer. (Id.; Doc. 44-3, at 94-95.) The reprimand also involved how Plaintiff handled a mailing assignment. (Doc. 44-3, at 94-95.) Plaintiff had been ordered "to determine the best and most practical method" for distributing a pamphlet involving long-term disability. (Id.) Instead of delivering these pamphlets herself, Plaintiff instructed all forty departments to pick up the pamphlets from the human resources department. (Id.) Plaintiff's supervisor accused her of choosing "what was easy and convenient for [Plaintiff]" instead of what was best for the other departments. (Id.)

Other employees had also complained about Plaintiff's customer service. For example, on June 2, 2011, Laurie McCain, a city employee, complained that Plaintiff had failed to send the department any applicants for summer interns. (Doc. 44-3, at 132.) When Ms. McCain asked Plaintiff for help, Plaintiff refused explaining that she was too busy. (Id.)

In November 2011, Plaintiff applied for a promotion as Senior Human Resources Analyst. (Porter Dep. at 39.) The minimum qualifications were a bachelor's degree in public administration, business management, or a related field, with

3

three years of professional experience or an equivalent combination of education and experience. (Doc. 44-3, at 121.) The only other applicant was Heather Hilderbrand, a white employee who was allegedly less qualified than Plaintiff. (Robinson Aff., Doc. 44-4, ¶ 4.) Ms. Hilderbrand had her associate's degree and five years of experience. (Porter Decl., ¶¶ 20, 23.) Plaintiff, on the other hand, had her master's degree, eight years of experience with Defendant, and one and a half years of prior management experience at Lady Footlocker. (Id. ¶ 23.) Nevertheless, Ms. Hilderbrand was selected as Senior Human Resources Analyst. (Robinson Aff. ¶ 4.) Plaintiff was told that she was not selected for the position due to her inability to handle difficult employees. (Porter Dep. at 42.) Mary Elizabeth Robinson, who was part of the committee that made the decision, testified that Plaintiff's disciplinary record was also a factor in the decision to hire Ms. Hilderbrand. (Robinson Aff. ¶ 4.)

In December 2011, Plaintiff was selected to serve as a Human Resources Analyst. (Porter Dep. at 11.) On May 30, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Second Amended Complaint, Doc. 23-1, ¶ 29.) On June 16, 2014, Plaintiff was transferred back to the SCMPD. (Doc. 44-3, at 83-84.) Despite

the transfer, Plaintiff retained the title of Human Resources Analyst and continued to receive the same salary. (Id.)

On July 12, 2016, more than six months after initiating this litigation, Plaintiff applied for a Human Resources Analyst position that was presumably different than the position Plaintiff currently held. (Porter Dep. at 107.) An African-American employee, Anthony Caston, was selected for the position. (Id. at 110.)

On November 9, 2015, Plaintiff initiated the instant action alleging multiple incidents of discrimination and retaliation. Defendant now moves for summary judgment arguing that no reasonable jury could find that Plaintiff was not promoted due to a racial animus.

## II. LEGAL STANDARD

A motion for summary judgment will be granted if there is no disputed material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Facts are material if they could affect the results of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view facts in the light most favorable to the non-moving party and draw all inferences in its favor. Matsushita Elec. Indus. Co.,

5

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant initially bears the burden of proof and must demonstrate the absence of a disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must also show no reasonable jury could find for the non-moving party on any of the essential elements. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

If the movant carries its burden, the non-moving party must come forward with significant, probative evidence showing there is a material fact in dispute. Id. at 1116. The non-movant must respond with affidavits or other forms of evidence provided by Federal Rule of Civil Procedure 56. Id. at 1116 n.3. The non-movant cannot survive summary judgment by relying on its pleadings or conclusory statements. Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). After the non-movant has met this burden, summary judgment is granted only if "the combined body of evidence is still such that the movant would be entitled to a directed verdict at trial – that is, such that no reasonable jury could find for the non-movant." Fitzpatrick, 2 F.3d at 1116.

## III. DISCUSSION

Plaintiff alleges that she was passed over for promotion in 2011 and 2016, and transferred to the SCMPD because of her race. Defendant moves for summary judgment arguing that Plaintiff has failed to show that Defendant's legitimate non-discriminatory motivations were a pretext for racial animus.

### A. Senior Human Resources Analyst (2011)

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can show discrimination by presenting direct evidence of discriminatory intent; statistical proof of disparate treatment; or circumstantial evidence sufficient to give rise to an inference of discrimination. Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999). To establish a *prima facie* case of discrimination, a plaintiff can follow the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) she was treated less favorably than a similarly situated individual

7

outside her protected class. Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003).

The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. Meeting this standard gives rise to a presumption of discriminatory intent, which the defendant must rebut by proffering a legitimate, nondiscriminatory reason for its action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). The defendant is only required to show that such a reason exists; it does not need to prove that reason was its actual motive. Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1556 (11th Cir. 1995). If the defendant meets its burden of production, the plaintiff must then show that the defendant's proffered reason is a pretext for its discriminatory motive. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272-73 (11th Cir. 2002).

Even assuming Plaintiff could establish a *prima facie* case of discrimination, Defendant has introduced evidence that Plaintiff was not selected for the position of Senior Human Resources Analyst due to her disciplinary record. (See Robinson Aff., Doc. 44-4, ¶ 4.) Because Defendant has introduced evidence of a legitimate nondiscriminatory reason for refusing to promote Plaintiff, the burden shifts to Plaintiff to show

8

that her disciplinary record is a pretext for racial discrimination.

Plaintiff argues that her qualifications alone demonstrate that her disciplinary record is being used as a pretext for racial discrimination. Despite the traditional rule that "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted," there are instances where an employee's qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Springer v. Convergys Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (internal quotations omitted).

Here, Plaintiff fails to show that her qualifications were so unparalleled that no racially impartial person could have selected Ms. Hilderbrand. Ms. Hilderbrand had seven years of education and experience, which satisfied the minimum qualifications for Senior Human Resources Analyst. (Porter Dep. at 45.) Although Plaintiff had more education and experience than Ms. Hilderbrand, Ms. Hilderbrand had a better disciplinary history than Plaintiff. (Id. at 40-41; Robinson Aff. ¶ 4.) Additionally, Ms. Robinson, who was on the committee that made the appointment, testified that she was impressed with Ms. Hilderbrand's initiative such as her help converting Defendant's

9

application process to an online format. (Robinson Aff. ¶¶ 4-5.) Thus, Ms. Hilderbrand's work history showed that she could be trusted to start her own projects with little supervision. Given that the Senior Human Resources Analyst was a supervisory position, an unbiased decisionmaker could have determined that Ms. Hilderbrand was a better candidate than Plaintiff.

Pretext may also be established by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." See Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotations omitted). In Smith, for example, an employee who claimed that he was fired due to his race was able to establish pretext through circumstantial evidence. The employee offered evidence that (1) the employer had a motive for treating white employees less favorably; (2) there were numerous incidents where white employees were punished more severely than their African-American colleagues; and (3) his employer created a "discipline matrix," which considered race when determining an employee's discipline. Id. at 1329-46.

In the instant case, Plaintiff has fallen considerably short of presenting "a convincing mosaic of circumstantial evidence." The only additional evidence Plaintiff provides is that between 2001 and 2010, she applied for and was denied several promotions. (Porter Decl. ¶¶ 10-20.) However,

Plaintiff fails to identify whether these incidents involved any of the same decisionmakers that hired Ms. Hilderbrand over Plaintiff. See Foster v. Biolife Servs., LP, 556 F. App'x 808, 812 (11th Cir. 2014) ("While not always the case, differences in treatment by different supervisors or decisionmakers can seldom be the basis for a viable claim of discrimination."). Without such information, these incidents do little to reveal a discriminatory animus behind the decision to hire Ms. Hilderbrand. In short, Plaintiff has failed to present evidence to show that Defendant's proffered reason for no promoting Plaintiff to Senior Human Resources Analyst was pretextual.

B. **Subsequent Acts of Discrimination**

Plaintiff also alleges that she was the victim of discrimination when she was transferred to the SCMPD in 2014. Yet Plaintiff retained the title of Human Resources Analyst and continued to receive the same salary. (Doc. 44-3, at 83-84.) As previously mentioned, a *prima facie* case of discrimination must demonstrate that the employee suffered adverse employment action. Maynard, 342 F.3d at 1289. An adverse employment action is one that results in "a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, 245 F.3d 1232, 1331 (11th Cir. 2004) (emphasis in original). A transfer can be an adverse employment

action when it involves a reduction in pay, prestige, or responsibility. Hinson v. Clinch Cnty. Bd. of Educ., 231 F.3d 821, 829 (11th Cir. 2000). Plaintiff has presented no evidence to support her allegation that being transferred to the SCMPD harmed future opportunities for advancement. Thus, Plaintiff's transfer to the SCMPD cannot give rise to a discrimination claim.

Finally, Plaintiff's allegation challenging that Defendant's hiring of Mr. Caston as Human Resources Analyst also fails because of Plaintiff's failure to present evidence of an adverse employment action.[2]

## IV. CONCLUSION

Plaintiff has failed to demonstrate that Defendant was motivated by racial animus when it chose Ms. Hilderbrand over Plaintiff for the position of Senior Human Resources Analyst. Additionally, Plaintiff has failed to present any evidence that her subsequent transfer to the SCMPD and failure to obtain the position of Human Resources Analyst in 2014 and 2016, respectively, were adverse employment actions. Accordingly,

---

[2] The Court further notes that Mr. Caston is the same race as Plaintiff. (See Doc. 44-5, ¶ 3.)

Plaintiff has failed to create a triable issue of whether Defendant engaged in discrimination in violation of Title VII.[3]

Upon due consideration, Defendant's Motion for Summary Judgment (doc. 44) is **GRANTED**. The Clerk is directed **ENTER JUDGMENT** against Plaintiff and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this 12th day of June, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] Because Plaintiff has failed to present evidence to support her Title VII claim, her § 1983 claim also fails. See Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 n.6 (11th Cir. 2010) ("[T]he test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment causes.").

13